**RECORD NO. 13-1625**

## IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

———————————

ETHEL E. TOLLIVER,
widow of Michael Lee Tolliver,

*Petitioner,*

v.

EASTERN ASSOCIATED COAL COMPANY;
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS;
DEPARTMENT OF LABOR,

*Respondents.*

———————————

ON APPEAL FROM THE BENEFITS REVIEW BOARD
———————————

**OPENING BRIEF OF APPELLANT**

———————————

S. F. Raymond Smith
David Huffman Law Services
521 Market Street, Suite 301
Parkersburg, WV 26101
(304) 428-6572 Telephone
sfrsnumberone@aol.com

*Counsel for Petitioner*                      July 15, 2013
*Ethel E. Tolliver*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>13-1625</u>    Caption: <u>Ethel E. Tolliver v. Eastern Associated Coal Corporation</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Ethel E. Tolliver</u>
(name of party/amicus)

who is <u>appellant</u>, makes the following disclosure:
　　　(appellant/appellee/amicus)

1.　Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.　Does party/amicus have any parent corporations? ☐ YES ☑ NO
　　If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.　Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
　　If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _s/ S. F. Raymond Smith_____     Date: ___May 21, 2013____

Counsel for: _Ethel E. Tolliver_____

## CERTIFICATE OF SERVICE
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I certify that on ___May 21, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_s/ S. F. Raymond Smith_____          _____May 21, 2013_____
           (signature)                                      (date)

07/19/2012
SCC

- 2 -

# **TABLE OF CONTENTS**

Page

DISCLOSURE STATEMENT

TABLE OF CONTENTS..........................................i

TABLE OF AUTHORITIES.....................................iii

I.    STATEMENT OF JURISDICTION.......................1

II.   ISSUES FOR REVIEW...............................1

      A.   WHETHER THE BENEFITS REVIEW BOARD ERRED IN AFFIRMING THE FINDINGS OF ADMINISTRATIVE LAW JUDGE JOSEPH E. KANE THAT THE DECEASED COAL MINER DID NOT SUFFER FROM PNEUMOCONIOSIS

      B.   WHETHER THE BENEFITS REVIEW BOARD ERRED IN FAILING TO FIND THAT THE MINER'S DISABILITY AND DEATH WERE DUE TO HIS COAL MINE EMPLOYMENT

III.  STATEMENT OF THE CASE...........................2

      A.   STATEMENT OF PROCEEDINGS ..................2

      B.   STATEMENT OF FACTS .......................4

IV.   SUMMARY OF ARGUMENT............................18

V.    STANDARD OF REVIEW.............................19

VI.   ARGUMENT.......................................19

      A.   THE BENEFITS REVIEW BOARD ERRED IN AFFIRMING THE FINDINGS OF ADMINISTRATIVE LAW JUDGE JOSEPH E. KANE THAT THE DECEASED COAL MINER DID NOT SUFFER FROM PNEUMOCONIOSIS ............................19

B.   THE   BENEFITS   REVIEW   BOARD   ERRED   IN
FAILING   TO   FIND   THAT   THE   MINER'S
DISABILITY AND DEATH WERE DUE TO HIS COAL
MINE EMPLOYMENT ............................21

VII.   CONCLUSION........................................27

VIII.  ORAL ARGUMENT....................................28

IX.    CERTIFICATE OF COMPLIANCE........................29

X.     CERTIFICATE OF SERVICE...........................30

## TABLE OF AUTHORITIES

**CASES**

Adkins v. Director, OWCP
958 F.2d 49 (4th Cir. 1992)...........................17, 20

Harman Mining Co., v. Director, OWCP,
678 F.3d 305 (4th Cir. 2012)..............................19

Island Creek Coal Co. v. Compton,
211 F.3d 203 (4th Cir. 2000).....................16, 19, 20

Perry v. Mynu Coals Inc.,
469 F.3d 360 (4th Cir. 2009)..............................26

Piney Mountain Coal Co. v. Mays,
176 F.3d 753 (4th Cir. 1999)..............................24

Shuff v. Cedar Coal Co.,
967 F.2d 977 (4th Cir. 1992)..............................27

U.S. Steel Mining v. Director, OWCP, ("Jarrell"),
187 F.3d 348 (4th Cir. 1999)..............................26

Westmoreland Coal Co. v. Cochran,
11-1839 (4th Cir. June 4, 2013)...........................27

Westmoreland Coal Co. v. Cox,
602 F.3d 276 (4th Cir. 2010)..............................24

**STATUTES AND REGULATIONS**

Black Lung Benefits Act, as amended, 30 U.S.C. §901-945

30 U.S.C. §921(b)(3)......................................19

30 U.S.C. §923(b).........................................20

30 U.S.C. §932(a).......................................1, 19

33 U.S.C. §921(b)(3)......................................19

33 U.S.C. §921(c)..........................................1

20 C.F.R. §718.202(a)............................13, 19, 21

20 C.F.R. § 725.309........................................4

iii

I.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to consider this claim under 33 U.S.C. §921(c) as incorporated by 30 U.S.C. §932(a). The statute provides that a party aggrieved by a final order of the Benefits Review Board may appeal that decision to the Court of Appeals in the Circuit in which the injury arose. The statute provides that the time limit for filing such an appeal is sixty (60) days, 30 U.S.C. §921(b)(3).

The Benefits Review Board issued its final Decision and Order in this claim on March 30, 2013. Claimant-widow, filed a timely Petition for Review of that decision which was received by this Court and docketed on May 13, 2013. The injury out of which this case arose occurred within the State of West Virginia.

II.

## ISSUES FOR REVIEW

A.  WHETHER THE BENEFITS REVIEW BOARD ERRED IN AFFIRMING THE FINDINGS OF ADMINISTRATIVE LAW JUDGE JOSEPH E.KANE THAT THE DECEASED COAL MINER DID NOT SUFFER FROM PNEUMOCONIOSIS

1

B.   WHETHER THE BENEFITS REVIEW BOARD ERRED IN
FAILING TO FIND THAT THE MINER'S DISABILITY AND
DEATH WERE DUE TO HIS COAL MINE EMPLOYMENT

III.

**STATEMENT OF THE CASE**

A.   STATEMENT OF PROCEEDINGS:

The claimant, Ethel Tolliver, is the widow of the late
Michael E. Tolliver.  Mr. Tolliver filed an initial application
for benefits in February of 1993, which was denied by the
Department of Labor on the grounds that he did not suffer from
pneumoconiosis in July of 1993.  Mr. Tolliver filed an
application for benefits which was subsequently approved by the
Department of Labor and a formal hearing was held before
Administrative Law Judge Stuart Levin on July 20, 1999.
Thereafter, Mr. Tolliver died and the claimant filed a claim for
widow's benefits on October 15, 1999.  The Department of Labor
granted the widow's claim for benefits and found that no
evidence was sufficient to overturn Mr. Tolliver's award of
benefits.  The employer filed a timely request for a formal
hearing.

After that hearing, Administrative Law Judge Alice M. Craft
issued a Decision and Order on September 29, 2003.  She
concluded that Mr. Tolliver had shown some change in condition

2

to allow consideration of this second claim, concluded that he suffered from pneumoconiosis and that the disease caused both his total disability and death. The employer filed a timely appeal.

The Benefits Review Board issued a Decision and Order on October 22, 2004, setting aside the judge's findings and remanding the claim to her with instructions to evaluate the credentials of the physicians offering opinions and reports in the matter.

Judge Craft issued a Decision and Order on Remand on March 30, 2006 again awarding benefits. The employer filed an appeal.

The Benefits Review Board once again vacated the judge's findings in its Decision and Order of March 26, 2007, and remanded the claim again with instructions to the judge to consider the qualifications of physicians offering opinions and reports in the claim and to address what the employer said were "equivocal" opinions offered on behalf of the claimant.

Judge Craft issued a Notice of Intent to take judicial notice of physician qualifications from published sources on December 10, 2008 and the employer filed an objection thereto. Judge Craft issued a Decision and Order granting benefits again on December 30, 2008 and noted the employer's objections to her

3

notice of the employer's objection to her notice of physician qualifications in an errata statement issued on January 9, 2009.

The Benefits Review Board set aside the judge's findings for the third time in a Decision and Order dated January 29, 2010, and granted the employer's request for a new ALJ to be assigned to the claim. The case was remanded to the Administrative Law Judge Joseph E. Kane who issued a notice to the claimant's then counsel and the other parties offering an opportunity to submit a brief. ALJ Kane issued a Decision and Order on March 19, 2012. He found that the evidence in this case did not establish that Mr. Tolliver suffered from pneumoconiosis and that he had therefore not established grounds for modification of the claim under 20 C.F.R. §725.309 and that the claimant widow was not entitled to benefits since her husband's death was not due to pneumoconiosis.

Claimant filed a timely appeal of ALJ's Kane's Decision and Order which was affirmed by the Benefits Review Board on March 20, 2013. Claimant filed a timely Petition for Review which was docketed by this Court on May 13, 2013.

B. **STATEMENT OF FACTS:**

The claimant married the late Mr. Michael Tolliver on October 10, 1967, and was still married to him at the time of

4

his death on September 25, 1999.  Mr. Tolliver was employed as a coal miner in the State of West Virginia for eighteen (18) years until he ceased his coal mine employment in May of 1987 which employed as a section foreman for Eastern Associated Coal Corporation.

In connection with is application for benefits Mr. Tolliver was examined by Dr. D. L. Rasmussen on June 28, 1995 (Appendix, pp.4-23).  Dr. Rasmussen conducted a physical examination of the claimant and was familiar with his employment and medical history.  Dr. Rasmussen conducted pulmonary function studies including ventilatory studies both before and after bronchodilators as well as blood gas tests before and after exercise.  In his initial opinion on the form provided in limited space for the Department of Labor Dr. Rasmussen said:

> "There are three possible risk factors for his impairment and lung function.  These include his coal mine dust exposure with its result pneumoconiosis, his previous ARDS, and possibly his rheumatoid arthritis. It is not possible to separate these effects.  His coal mine dust exposure must be considered a significant or major contributing factor.  His possible asthma is not reflective in the current study." (Appendix p. 14)

In his more extensive narrative report Dr. Rasmussen concluded that Mr. Tolliver's respiratory problems precluded his return to his usual coal mine employment and concluded:

5

"This patient has a long history of exposure to coal mine dust.  He has extensive x-ray abnormalities consistent with pneumoconiosis.  It is medically reasonable to conclude that he has coal workers' pneumoconiosis which arose from his coal mine employment. This patient appears to have multiple risk factors for his disabling respiratory insufficiency. These, of course, include his coal mine exposure with its resultant pneumoconiosis.  He also has a history of having suffered from acute respiratory distress syndrome in the past and could have some residual impairment as a consequence of that disease.  He also gives a history of having been diagnosed with rheumatoid arthritis.  The later could involve his pulmonary tissue.  The patient also gives a history suggestive of hyperactive airways disease. Hyperactive airways disease does not appear to have influenced the finding of this examination however. Since none of the other conditions can be differentiated physiologically from that of coal workers' pneumoconiosis, one must conclude that the patient's coal mine dust exposure with its resultant pneumoconiosis is at least a major contributing factor to his disabling respiratory insufficiency." (Appendix pp.17-18)

The employer had Mr. Tolliver evaluated by Dr. Joseph Renn on January 15, 1996.  In his initial report of January 25, 1996 as well as an update from September 9, 1996 (Appendix, pp. 162, 183), Dr. Renn speculated that although the chest x-ray were consistent with pneumoconiosis the fibrosis seen on Mr. Tolliver's examinations were due to some idiopathic pulmonary interstitial fibrosis.  He concluded that since Mr. Tolliver did not suffer from pneumoconiosis the disease would have no effect on him.

6

In a report dated December 30, 1996, Dr. Rasmussen commented on Dr. Renn's opinion as well as other medical reports listed regarding prior examinations of Mr. Tolliver and his medical history. Dr. Rasmussen noted that a biopsy of the lower part of Mr. Tolliver's lungs might well miss coal workers' pneumoconiosis and concluded that coal mine dust should be included :

> "…as a possible significant contributing factor in any diffuse interstitial pulmonary fibrosis he may have. Mr. Tolliver also certainly has other medical conditions which could contribute to or cause the same abnormality; mainly, history of having had a diagnosis of rheumatoid arthritis established and also having suffered adult respiratory distress syndrome. However, it is impossible to exclude the patient's coal mine dust exposure as a significant contributing factor as a significant contributing factor in view of the evidence for interstitial fibrosis occurring among coal miners" (Appendix, p. 56)

After Mr. Tolliver's death, claimant submitted a report from his treating physician, Dr. Troy Sullivan, dated October 21, 1999. Dr. Sullivan was aware of the fact that Mr. Tolliver suffered from conditions other than pneumoconiosis but said:

> "It is my impression that his pre-existing medical problems played a major role in his death from this condition. He ultimately from ventricular fibrillation which I believe was brought on by electrolyte imbalances including acidosis and hyperkalemia. These are due to renal failure and inadequate ventilation. His ventilatory failure was a result of his acute illness compounding his previous lung disease. Mr. Tolliver had to be intubated in the early hours of the morning. Within about thirty

7

minutes of the intubation he died. I therefore, believe that Mr. Tolliver would not have died from pancreatitis had it not been for his pneumoconiosis and other health problems." (Appendix, p.144)

In a follow up report of September 12, 2001, Dr. Sullivan further explained his opinions stating:

"...I maintain my belief that Mr. Tolliver's pneumoconiosis played a major role in his death. His renal failure and inadequate ventilation lead to acidosis and hyperkalemia. The acidosis and electrolyte abnormality caused death by inducing a cardiac arrhythmia" (Appendix, p. 182)

The employer introduced several reports from Dr. Peter Tuteur both before and after Mr. Tolliver's death. In his initial report of December 17, 1996, (Appendix, p. 91) Dr. Tuteur admitted that Mr. Tolliver suffered from a diffuse interstitial pulmonary fibrosis but said the inability of two of the employer's physicians to determine the presence of pneumoconiosis from Mr. Tolliver's biopsy allowed him to conclude :

"…it is with reasonable medical certainty that the diffuse interstitial pulmonary process pathologically proved and associated with clinically consistent parameters is not due to the inhalation of coal mine dust but as a result of adult respiratory distress syndrome caused by urosepsis and treated with prolonged mechanical ventilation (Appendix, p. 94).

In his follow up report of June 7, 1999 (Appendix, pp. 153-160) Dr. Tuteur again speculated that the biopsies taken on Mr. Tolliver would necessarily have given rise to a diagnosis of

pneumoconiosis if coal mine dust had been present in Mr. Tolliver's lungs. Dr. Tuteur did admit that Mr. Tolliver was permanently and totally disabled. In a deposition taken on July 6, 1999, Dr. Tuteur admitted it was not possible to exclude a diagnosis of coal workers' pneumoconiosis with absolute certainty but said:

> "…but the questions asked of me were not is it remotely possible, but with reasonable medical certainty, did Mr. Tolliver have coal workers' pneumoconiosis. And with reasonable medical certainty, he did not. He did not because open lung biopsy did not show it. He did not because of the fibrosis that was present absent the associated coal dust deposition, absent the coal dust macule, absent the macro nodules, absent the micro nodules, absent the focal emphysema, was fully explained of the clinical course of Mr. Tolliver's illness." (Appendix, p 204).

Dr. Tuteur repeated his conclusions in a subsequent report at his second deposition where he stated that he disagreed with Dr. Sullivan's opinion that pneumoconiosis played a role in Mr. Tolliver's death because of Dr. Tuteur's opinion that the miner did not suffer from pneumoconiosis.

Dr. Lawrence Repsher reviewed Mr. Tolliver's record and also provided several medical reports dated December 16, 1996 (Appendix, p. 85); June 15, 1999 (Appendix, p. 261: May 31, 2002 ( Appendix p. 248) . Like Dr. Tuteur, Dr. Repsher relied on the inability of the other employer's physicians to diagnose

9

pneumoconiosis to conclude that Mr. Tolliver did not suffer from pneumoconiosis. In his initial report he agreed with Dr. Rasmussen that coal workers' pneumoconiosis would involve the upper lobes of the lung and said: "finally, the ultimate arbiter, which is the open lung biopsy, showed no evidence of coal workers' pneumoconiosis. " In his most recent report Dr. Repsher went so far as to say there was no evidence of pneumoconiosis at all.

Dr. Abdul Dahhan also conducted several record reviews for the employer and was able to diagnose the presence of pneumoconiosis in his initial report but stated that it was too mild to cause the totally disabling respiratory impairment found in the test. In his subsequent reports and in his deposition of June 24, 2002, Dr. Dahhan relied on the negative pathology reports introduced by the employer to rule out the presence of pneumoconiosis. He attempted to explain this by saying that his initial diagnosis of pneumoconiosis was overcome by the biopsy evidence.

Dr. Renn testified at the hearing held in this claim on June 26, 2002, and repeated his opinion that Mr. Tolliver suffered from idiopathic pulmonary fibrosis and disagreed with the decision to intubate Mr. Tolliver at the time of his death because of Dr. Renn's belief that Mr. Tolliver was well

10

oxygenated and did not need mechanical ventilation (Appendix, pp. 448-480).

Mr. Tolliver's open lung biopsy during his hospitalization in November of 1992. The pathologist who evaluated that sample was Dr. James Clay who said that the sample he saw gave rise to a diagnosis of "end stage pulmonary fibrosis, cause not apparent". (Appendix, p. 24).

The Department of Labor had this biopsy evaluated by Dr. Richard Naeye who submitted a report dated March 23, 1993. Dr. Naeye concluded:

> "coal workers' pneumoconiosis (CWP) is absent in the tissue that is available for examination but the amount of tissue is too small to be completely certain that CWP is absent. Since the coal workers' pneumoconiosis is presumably absent it could not be causing impairments in lung function that would prevent this man from doing hard physical work in the coal mining industry. If he had died there is no evidence in the available tissue that CWP hastened his death. From the information that is available I do not know the cause of the fibrosis that is present in the small fragment of lung tissue" (Appendix, p. 25).

In a report for the employer dated March 21, 1997, Dr. Naeye again said this biopsy did not demonstrate the presence of pneumoconiosis but still admitted the tissue sample he saw was not large enough to rule out the presence of coal workers' pneumoconiosis (Appendix, p. 118).

11

Dr. Jerome Kleinerman evaluated the sample and stated that because there was no evidence of CWP in the sample Mr. Tolliver did not suffer from the disease.  He did admit "Mr. Tolliver had interstitial fibrosis of a non-specific type.  The lung fibrosis was responsible in part for Mr. Tolliver's total disability.  However, this disability was in no way the result of coal mine induced lung injury or any other lung induced injury".  (Appendix, p. 108 )

Dr. Williams evaluated a CT Scan taken on January 15, 1996, in conjunction with Dr. Renn's evaluation and noted the presence of a nodular pattern that could be compatible with coal workers' pneumoconiosis "in the appropriate clinical setting".

In her initial discussion of the opinion evidence Judge Craft noted the absence of qualifications for some of  the physicians in the record but said that the context of the case suggested that all of them were specialists in the evaluating and treating of patients with lung disease.  She noted the employer's physicians who either initially or eventually ruled out the presence of pneumoconiosis did so on the basis of the limited pathology evidence over the radiographic evidence including the most recent CT Scan of record.  The ALJ stated,

> "I do not discredit any of the medical opinions of record. After weighing all the medical opinions, however, I resolve this conflict by recording greater

12

probative weight to the opinions of Drs. Jenkins, Albin and Rasmussen.  I find their opinions to be in better accord with the overall medical evidence of record." (Appendix p. 514)

Having concluded that the evidence established Mr. Tolliver suffered from pneumoconiosis, she discounted the opinions of the employer's physicians who had not diagnosed the presence of the disease and concluded that Mr. Tolliver was entitled to benefits.  Similarly, she credited the report of Mr. Tolliver's treating physician that his death was hastened by his pneumoconiosis to find that the claimant was entitled to benefits.

After the employer's appeal of Judge Craft's decision the Benefits Review Board, in its decision of October 22, 2004, held that the judge should make a finding regarding change in condition based on the newly submitted evidence and to reconsider the relevant x-ray evidence of record under 20 C.F.R. §718.202.  The judge's findings regarding the medical opinion of evidence of record with instructions to, among other things, "discuss the weight she accorded to the various credentials of the other physicians of record".
Because the judge's findings in this regard were set aside her findings regarding disability causation and death were also set aside.  Finally Judge Craft was directed to weigh the

13

medical evidence to as to satisfy the requirements of the Administrative Procedure Act.

Judge Craft issued a Decision and Order on Remand acknowledging the instruction from the Benefits Review Board and once again evaluating the evidence on March 30, 2006. She again noted that this Court's decision in Compton required her to evaluate all the evidence of record together and found that the x-ray evidence as well as the CT evidence was insufficient to establish the presence of pneumoconiosis. She acknowledged that Drs. Tuteur, Repsher, Dahhan, and Renn were all board certified specialists in pulmonary disease and concluded that they possessed superior qualifications to Dr. Rasmussen but explained the inconsistency of their opinions. She found that the evidence taken as a whole did indeed support the conclusion that Mr. Tolliver had legal pneumoconiosis and again accepted the opinion of Dr. Rasmussen regarding the cause of Mr. Tolliver's impairment and Dr. Sullivan's report was sufficient to establish that Mr. Tolliver's death was due to pneumoconiosis. (Appendix pp. 518-560)

The employer appealed again and this time alleged that the ALJ failed to fully analyze the credentials of the physicians. The employer also argued that the ALJ improperly credited Dr. Rasmussen's report because of his use of the word " possible "

14

in one portion of his examination and that the ALJ credited Dr. Sullivan's opinion regarding cause of death simply because he was Mr. Tolliver's treating physician. The Benefits Review Board accepted these contentions and remanded the claim to ALJ Craft in its Decision and Order of March26, 2007 ( Appendix p. 650)

Prior to her third Decision and Order in this claim Judge Craft gave notice of intent to take judicial notice of federal publications regarding A and B readers for x-ray interpreters and board certifications maintained by the American Board of Medical Specialties. The employer filed an objection to this simply on the grounds that it was somehow deprived of an opportunity to respond. Judge Craft issued a Decision and Order on December 30, 2008, again acknowledging all of the directions of the Benefits Review Board and eventually issued an errata on January 9, 2009, overruling the employer's objection. In her Decision and Order the ALJ again noted that the qualifications of employer's physicians did not require her to credit their reasoning and she again found that Mr. Tolliver suffered from pneumoconiosis which contributed to his total disability and death. ( Appendix pp. 561-606 )

Employer filed a timely petition for review of the judge's decision and asked the Benefits Review Board to assign the case to a different ALJ. In its Decision and Order of January 29,

15

2010, the Board set aside the ALJ's determination that the newly submitted x-ray evidence was sufficient to establish pneumoconiosis and her crediting of Dr. Rasmussen's report.  The Board accepted the employer's contention that Judge Craft did not accurately characterize the opinions of Drs. Tuteur, Renn and Dahhan and set aside her findings regarding the qualifications of the various physicians despite the judge's finding that the qualifications of the employer's physicians was superior than that of Dr. Rasmussen's.  Finally the Board said that it was "in the interest of justice and judicial economy to grant employer's request to remand this case for assignment to a new administrative law judge for a "fresh look at the evidence" and proper application of the law to the evidence. ( Appendix p.667 )

The case was assigned to Administrative Law Judge Joseph E. Kane who issued a Decision on Remand  dated March 19, 2012.  ALJ Kane noted that Judge Craft had "accurately and thoroughly summarized the medical evidence in her prior decisions and orders but I'll re-summarize the medical evidence in this decision and order" (Appendix, p. 610).  ALJ Kane went on to address the issue of the existence of pneumoconiosis by stating that this Court's decision in Island Creek Coal Company v. Compton, 211 F. 3d 203 (4th Circuit 2000)  required that

16

"…pneumoconiosis must be established by a preponderance of the evidence in all four categories" (Appendix p.625). After reviewing the x-ray evidence, Judge Kane, despite acknowledging this Court's rejection of the mechanical application of the" later evidence " rule in Adkins v. Director, OWCP, 958 F.2d 49, said:

> "I do find, however, that the two most recent films being interpreted as negative by duly qualified physicians undercuts the strength of earlier films read as positive by both B-readers and duly qualified physicians.  It is impossible for a miner to have pneumoconiosis in 1996 but to be free and clear of the disease in 1999". (Appendix, p. 628)

ALJ Kane    accepted the employer's argument that the inability of its  "more qualified" radiologists to diagnose pneumoconiosis prevented him from finding the weight of the x-ray evidence showed the presence of pneumoconiosis. Like Judge Craft he found the CT Scans were inconclusive to the presence of pneumoconiosis and that the biopsy evidence was negative.  ALJ Cain accepted the opinions of Drs. Renn and Tuteur as having full probative weight, gave less weight to Dr. Rasmussen's opinion as well as that of Dr. Dahhan, gave little weight to Dr. Jenkins' report and none at all to the reports of Drs. Sullivan and Albin.  ALJ Kane concluded:

> "the evidence does not establish the existence of pneumoconiosis.  Without a showing of pneumoconiosis, the claimant necessarily cannot establish the miner

17

was totally disabled by or died due to the disease. As a result, claimant has failed to establish entitlement to benefits under the Act." (Appendix, p.638).

Claimant filed a timely appeal of ALJ Cain's decision which was affirmed by the Benefits Review Board on March 20, 2013.

IV.

### SUMARY OF ARGUMENT

All of the physicians credited by ALJ Kane who were unable to diagnose the presence of pneumoconiosis did so either on the basis of negative radiological results or a limited biopsy taken during Mr. Tolliver's lifetime. The employer's physicians all began their evaluations with the assumption that Mr. Tolliver did not suffer from pneumoconiosis and therefore the disease had no effect on his pulmonary capacity during his life or on the cause or timing of his death. Contrary to the findings of the Benefits Review Board, the opinion of Dr. Rasmussen was not speculative or based on a single factor but on a proper review of the evidence available to the doctor at the time.

ALJ Kane, although citing the proper standards for evaluation of the evidence set forth by this Court, likewise assumed that Mr. Tolliver did not suffer from pneumoconiosis and credited or discredited the reports of physicians based on their acceptance of that assumption. ALJ Kane applied an improper

18

legal standard in his evaluation of the medical evidence regarding the existence of pneumoconiosis and failed to show a rational basis in the record of this claim to explain his determination to credit the reports of Drs. Renn and Tuteur.

V.

**<u>STANDARD OF REVIEW</u>**

This Court's standard for review is to determine whether the Benefits Review Board properly found, pursuant to 33 U.S.C. §921(b)(3), as incorporated by 30 U.S.C. §932(a) that the decision of the Administrative Law Judge was rational, supported by substantial evidence, and consistent with applicable law, <u>Harman Mining Co., v. Director, OWPC</u>, 678 F.3d 305 (4th Cir. 2012).

VI.

**<u>ARGUMENT</u>**

A.   THE BENEFITS REVIEW BOARD ERRED IN AFFIRMING THE FINDINGS OF ADMINISTRATIVE LAW JUDGE JOSEPH E. KANE THAT THE DECEASED COAL MINER DID NOT SUFFER FROM PNEUMOCONIOSIS

In <u>Island Creek Coal Co. v. Compton</u>, 211 F.3d 203 (2000), this Court rejected the argument that it was permissible to weigh the evidence regarding the existence of pneumoconiosis separately under each of the four subsections of 20 C.F.R. §718.202(a). The Court held:

19

"…accordingly, because the ALJ failed to weigh all the evidence together as is required by 30 U.S.C. §923(b) we vacate the order of the BRB affirming the ALJ's decision and remand the case to the BRB with instructions to remand the case to the ALJ. On remand the ALJ must weigh the x-ray evidence with a physician's opinion to determine whether Compton has established the existence of pneumoconiosis by a preponderance of all the evidence". Compton @ p. 211.

In her three decisions, ALJ Craft acknowledged the decision in Compton and correctly noted that it required a weighing of all the evidence together. ALJ Kane characterized the rule set forth by this Court in Compton, however, as a requirement that "pneumoconiosis must be established by a preponderance of evidence in all four categories;" (Appendix p.625, Emphasis supplied).

Similarly, although Judge Kane acknowledged that this Court in Adkins v. Director, OWCP, 958 F.2d 49 (4th Cir. 1992)rejected a mechanical application of the "later evidence" rule, he relied on the most recent x-rays to establish that Mr. Tolliver did not suffer from pneumoconiosis. He noted the more recent x-rays reports from the employer, taken after Mr. Tolliver had ceased his coal mine employment were negative and said, "it is impossible for a miner to have pneumoconiosis in 1996 but to be free and clear of the disease in 1999". (Appendix, p.628).

Obviously, Judge Kane accepted the assumption of the employer's physicians that their inability to diagnose Mr.

20

Tolliver's pneumoconiosis meant that he did not suffer from the disease. ALJ Kane applied a clearly improper legal standard in his analysis of the evidence since he would require the claimant to establish pneumoconiosis by a preponderance in all of the categories under 20 C.F.R. §718.202(a). His decision in this regard should be reversed.

> B. THE BENEFITS REVIEW BOARD ERRED IN FAILING TO FIND THAT THE MINER'S DISABILITY AND DEATH WERE DUE TO HIS COAL MINE EMPLOYMENT.

Starting with her first Decision and Order in this claim Judge Craft acknowledged the correct legal standard for assessing the case, thoroughly discussed the medical evidence of record and explained her decisions. Indeed, even ALJ Kane admitted that Judge Craft had "accurately and thoroughly" summarized the medical evidence. In its first Decision and Order the BRB accepted the employer's argument that the judge had improperly found a change in the miner's condition in this case and directed her to more thoroughly evaluate the evidence of record including the credentials of the physicians of record who gave opinions. ALJ Craft complied with the Board's order in another extensive opinion and again found entitlement to benefits.

21

ALJ Craft specifically noted the credentials of the employer's physicians which were well documented in the record. In its second Decision and Order remanding the case, the BRB once again accepted the employer's argument that the Judge's decision was somehow insufficient for review and also accepted the employer's argument that the mere use of the word "possible" in one of Dr. Rasmussen's opinions rendered all of Dr. Rasmussen's opinions equivocal. The BRB asked Judge Craft to again explain her weighing of the credentials of various physicians despite her finding that she found that Drs. Tuteur, Repsher, Dahhan and Renn possessed credentials superior to that of Dr. Rasmussen.

In her third Decision and Order ALJ Craft again thoroughly and completely evaluated the evidence of record and explained her findings demonstrating the presence of pneumoconiosis in Mr. Tolliver, thus showing a change in his condition from the earlier denial as well as her findings regarding the medical evidence, opinions, testimony, and findings regarding the causation of Mr. Tolliver's disability and death. The employer objected to the judge even taking judicial notice of the qualifications of physicians available in reliable sources, raised the same arguments it had before and asked that the Benefits Review Board give it a new ALJ in the case.

22

In its Decision and Order of January 29, 2010, the BRB accepted the employer's arguments on the qualifications of the physicians of record as well as the employer's argument it was error for ALJ Craft to discredit the opinions of the employer's physicians based on her analysis of the reasoning in their reports.

Judge Craft's opinions in this case ran to 33, 41 and 39 pages respectively. ALJ Kane conceded in his summary of the medical evidence that she had accurately and thoroughly summarized the record in this case. Although the BRB stated that Judge Craft somehow failed to properly evaluate the credentials of the physicians of record and said she should have considered such factors as their "…professorships, authoring articles and books, lecturing and memberships and professional associations…" (Appendix p.666 ) even after she had acknowledged that the qualifications of the employer's physicians were superior to those of Dr. Rassmussen and Mr. Tolliver's treating physicians.

It is noteworthy that in its discussion of ALJ Kane's evaluation of the medical opinion evidence, the BRB passed over the fact that he simply affirmed Judge Craft's determination that Drs. Repsher, Tuteur, Dahhan and Renn had qualifications superior to that of Dr. Rasmussen and accepted his decision to

23

grant the greatest weight to the reports of Drs. Renn and Tuteur based on their assertion that they had based their opinions on all the evidence of record and, in the case of Dr. Renn, because his opinion that Mr. Tolliver did not suffer from pneumoconiosis was unequivocal. The BRB did not explain why it was unnecessary for ALJ Kane to discuss the"…professorships, authoring articles and books, lecturing and memberships and professional associations…" of Dr.'s Renn and Tuteur.

Claimant submits that an administrative law judge is not Required to explain her determinations in a Federal Black Lung case to the satisfaction of the employer. Nor is the ALJ required to recite back into her decision every single word of the record. As this Court has noted that once it can determine what the ALJ did and why she did it, her duty of explanation is satisfied. Piney Mountain Coal Co. v. Mays, 176 F.3d @ p. 762, n.10). Contrary to the arguments of the employer, ALJ Craft repeatedly acknowledged her responsibility to base a decision on all the evidence of record and, unlike Judge Kane, articulated the correct interpretation of applicable law and regulation. There is no merit to the employer's argument that the ALJ's decision was unexplained or based on anything but a proper review of the record as a whole. Westmoreland Coal Co. v. Cox, 602 F.3d 276.

24

Again, contrary to the arguments of the employer and the rulings of the Benefits Review Board, there is nothing equivocal in Dr. Rasmussen's opinions expressed in this claim regarding the diagnosis of Mr. Tolliver's pneumoconiosis or its contribution to his pulmonary disability and death. The employer seized upon Dr. Rasmussen's reference to "possible" causes of Mr. Tolliver's pneumoconiosis, pulmonary impairment, and death in one portion of his initial report to argue all of his opinion was equivocal. Judge Kane accepted this argument by stating the t that the equivocal nature of Dr. Rasmussen's report was diminished the weight to which that opinion was entitled (Appendix, p. 635).

When one reads all of Dr. Rasmussen's opinion it is obvious they are not "equivocal" but state the doctor's certainty that pneumoconiosis along with other factors contributed to Mr. Tolliver's pneumoconiosis, disability respiratory impairment and death. Dr. Rasmussen did candidly admit that he could not exclude other factors from his evaluation but, as this Court has noted, "a refusal to express a diagnosis in categorical terms is candor, not equivocation, and we're of the opinion that it enhances rather than undermines [the doctors] credibility. In contrast, the other doctors' adamancy that their opponents were incorrect in all or nearly all respects detracts from

25

credibility." <u>Perry v. Mynu Coals</u>, 469 F.3d 360 (4th Cir. 2006 @ p. 366). Claimant would invite the Court's attention to the fact that neither the BRB nor ALJ Kane felt Dr. Tuteur's admission that he was not one hundred percent sure of his diagnosis excluding the presence of pneumoconiosis from Mr. Tolliver did not rise to a level of equivocation to render his report less worthy of weight.

Dr. Rasmussen was eventually provided with the medical evidence initially relied on by the employer's physicians for their opinions that Mr. Tolliver did not suffer from pneumoconiosis. He also performed his own examination of Mr. Tolliver and was aware of the circumstances regarding Mr. Tolliver's death. These facts distinguish this case from situation addressed by this Court in <u>United States Steel Co. v. Director, OWCP</u>, (Jarrell), 187 F.3d 384. In that case the Court found since Dr. Rasmussen admitted that he had no information regarding the mechanics of Mr. Jarrell's death his report was indeed speculative.

In contrast the Benefits Review Board's requirement of Judge Craft to provide ever more explanation for her determinations, Judge Kane's Decision and Order affirming a denial of benefits upheld because ALJ Kane accepted the employer's arguments that the opinions of its physicians were

better reasoned because the employer said they were. Claimant submits that this battle of the experts was properly resolved by ALJ Craft, in accordance with this Court's decisions in Compton and Westmoreland Coal Co. v. Cochran, (Case No. 11-1839)(June 4, 2013)(4th Cir. 2013). As was the case in Cochran, ALJ Craft's decisions show "...a careful consideration of the experts' qualifications, their opinions, and the underlying medical science". (@ p. 14-15). See also Shuff v. Cedar Coal Co., 967 F. 2d 977 ( 4th Cir. 1992)

VII.

**CONCLUSION**

The record in this claim contains not one but three Decisions and Orders by an Administrative Law Judge which thoroughly discuss the evidence of record, contain an explanation of the ALJ's determinations applying the correct legal standard and supported by substantial evidence. Claimant submits that the BRB erred in exceeding its proper role of review and to continually set aside those findings until the employer achieved a favorable result. Claimant respectfully requests that the Benefits Review Board's Decision and Order of March 20, 2013, be set aside and the claim be remanded with instructions to grant Mrs. Tolliver benefits as of October 15,

27

1999, and to find that Mr. Tolliver would have been entitled to benefits as of July 20, 1994.

## VIII.

### <u>ORAL ARGUMENT</u>

The claimant respectfully submits that the issues raised in this appeal may be addressed by the parties in their briefs. Claimant does not desire to present oral argument in this case unless directed to do so by the Court.

Respectfully Submitted,

ETHEL TOLLIVER,

By Counsel:

S. F. RAYMOND SMITH, ESQUIRE
DAVID HUFFMAN LAW SERVICES
521 Market Street, Suite 301
Parkersburg, WV  26101
COUNSEL FOR THE PETITIONER

IX.

## CERTIFICATE OF COMPLIANCE

Claimant's counsel, pursuant to Rule 32(a) of the Federal Rule of Appellate Procedure, hereby certifies that this brief consists of twenty-eight (28) pages. Counsel further certifies that the brief complies with the typeface requirements of Rule 32(a). The brief has been prepared in Courier, 12 Point type.


____/S/_____
S. F. RAYMOND SMITH, ESQUIRE
DAVID HUFFMAN LAW SERVICES
521 Market Street, Suite 301
Parkersburg, WV  26101

29

X.

## **CERTIFICATE OF SERVICE**

I, S. F. Raymond Smith, hereby certify that on July 15, 2013, copies of the foregoing BRIEF OF PETITIONER, and a copy of the Joint Appendix was served on the following parties and that service was made electronically to those parties subscribing to the CM-ECF system:

Jeffrey S. Goldberg, Esq.
Sean G. Bajkowski, Esq.
U.S. Department of Labor
Office of the Solicitor
Frances Perkins Building
200 Constitution Avenue, N.W.
Suite N-2117
Washington, DC  20210

Laura M. Klaus, Esq.
Mark Solomons, Esq.
Greenberg Traurig, LLP
Suite 1000
2101 L Street, NW
Washington, DC  20037

U.S. Mail:

Mrs. Ethel E.Tolliver
101 Wolfcreek Trail
Bowersville, WV  30516

_____/s/_____
S. F. RAYMOND SMITH, ESQ.
DAVID HUFFMAN LAW SERVICES
521 Market St., Suite 301
Parkersburg, WV  26101
Phone:  (304) 428-0572
E-Mail: sfrsnumberone@aol.com

30